PANO ANASTASATO AND JANICE ANASTASATO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anastasato v. Commissioner
Docket No. 14631-81.
United States Tax Court
T.C. Memo 1986-400; 1986 Tax Ct. Memo LEXIS 206; 52 T.C.M. (CCH) 293; T.C.M. (RIA) 86400; August 26, 1986. *206 Alan H. Levine, for the petitioners. Jack H. Klinghoffer, for the respondent. KORNER
SUPPLEMENTAL MEMORANDUM OPINION KORNER, Judge: In , we sustained the Commissioner's determination that override payments were made by KLM Royal Dutch Airlines ("KLM") during the years 1974 through 1976 to Panmarc, a corporation wholly-owned by petitioner Pano Anastasato ("Pano"), and through it to Pano. We concluded that -- since the Commissioner had established, by admissible and substantive evidence, that petitioners were directly linked to the income-producing activity which was the basis for respondent's determination of additional unreported income -- the Commissioner's statutory notices of deficiency were entitled to their usual presumption of correctness. Having previously noted that the presumption of correctness attaching to the notice of deficiency is procedural and places on petitioners the burden of proof to show that respondent's determination is incorrect, we held, inter alia, that since [p]etitioners herein presented no affirmative evidence to demonstrate any error in respondent's said *207 determinations, having contented themselves throughout this trial with attacking only the basis for respondent's determinations, rather than the accuracy thereof * * * [the] determinations of deficiency must be upheld. [; 54 P-H Memo. T.C. par. 85-101 at 464-85.] Petitioners Pano and Janice Anastasato appealed our decision to the Court of Appeals for the Third Circuit. [1] While affirming our decision on all other points as to which appeal was taken, including our holding that the burden of proof was on petitioners to show error in respondent's determination of deficiencies, but not as to respondent's determination of additions to tax for fraud, the Third Circuit vacated our decision and remanded the case to this Court, based on its interpretation of the above-quoted language as indicating that: the court believed that, once the Commissioner was granted the usual [presumption] of correctness, the question whether the taxpayer received the alleged unreported income no longer remained at issue and only the amount of the assessment could be considered. [Slip op. at 8; USTC par. 9529 at 85,142; *208 .] The Court stated that it was possible that the taxpayer could ultimately prevail by proving that while he engaged in the activity in question he never received the income in question. It is possible that the Tax Court, on proper consideration of the taxpayer's denial of receipt of income, will find such denials improbable. Nevertheless, because the court did not explicitly or implicitly reject the taxpayers' testimony, we will remand the case for consideration of this point. [Slip op. at 9; footnote omitted.] We regret the uncertainty which the language of our prior opinion occasioned, and we undertake to clarify it herewith. We did not intend to say, nor infer in any way, that according to respondent's statutory notice its usual presumption of correctness was conclusive as to Pano's receipt of unreported income. As the Court of Appeals held (slip *209 op. at 5), the presumption is simply a procedural device which places the burden of proof on the petitioner to show error by respondent. It is not evidence. ; , affg. . Pano was thus free to show, by a preponderance of the evidence, , that respondent's determination was erroneous, either in whole or in part. This included his right to show, if he could, either that he received no such income, or that he received less than respondent had determined. As the Court of Appeals noted (slip op. at 8) Pano's efforts in this regard "consisted of denials that he ever received the income in question." The evidence presented to us was Pano's self-serving testimony that he had not received any of the overried commissions that he, both personally and through the employees of his corporations, had aggressively negotiated, and as to which there were several agreements between KLM and one or the other of Pano's wholly-owned corporations in the period in issue. In discharging *210 our ultimate duty as trier of the facts -- the "distillation of truth from falsehood which is the daily grist of judicial life," -- we carefully evaluated the credibility of the witnesses, including Pano, whom we saw and whose demeanor we observed. In making such evaluation, we were not compelled to accept such testimony as gospel, see ; , affg. . Even when uncontroverted, we may reject such testimony if if is improbable, unreasonable or questionable. , revg. ; . Further, as the Court of Appeals herein noted (ship op. at 8), "A general denial of liability is insufficient to meet the taxpayer's burden of nonpersuasion." We found Pano's testimony lacking in candor and forthrightness, and his memory of events and circumstances to be highly selective. We accordingly rejected his *211 testimony as both improbable and questionable. See ;Our failure to say so explicitly is due to the fact that we did not consider Pano's testimony to be uncontroverted in this record. There was ample evidence in this record, through the testimony of KLM employees, Pano's employees and, indeed, Pano himself, that Pano and KLM had met repeatedly and had negotiated agreements for the payment of override commissions during the period here in issue, based upon certain percentages of airline tickets sold by KLM. Although there was no direct evidence as to specific amounts paid by KLM under these override agreements, it was reasonable to conclude, absent any evidence to the contrary, that such agreements, once entered into, were carried out. If they were not, it is difficult to understand why Pano continued to do business with KLM; there is no evidence in this record that he could not have taken his business to another airline which would have been more accommodating. We think that these were reasonable inferences which we could draw from the evidence and which would be contrary to *212 Pano's testimony. In , the Third Circuit, in commenting upon its earlier case of , pointed out that where the taxpayer's evidence is not controverted, it might be sufficient to support a finding in his favor unless it is rejected by the trier of fact as being improbable, unreasonable or questionable. However, where the taxpayer's evidence is controverted, Demkowicz does not require that the trial court specifically reject the taxpayer's evidence as improbable, unreasonable or questionable. Where the evidence is in conflict, the trial court can decide the matter on the basis of the usual burden of proof, i.e., whether the taxpayer has proved his case by a preponderance of the evidence. . Viewed in this light, we concluded that Pano had failed to carry his necessary burden of proof to show, by a preponderance of the evidence, that he did not received the income in question. Whether Pano's evidence was to be considered as uncontroverted, or controverted by the other evidence in the record, however, we rejected *213 it as improbable and questionable. It results that our prior holding in favor of the Commissioner as to the deficiencies in issue must be sustained. Our prior decision will be reinstated.
Footnotes
1. Petitioner Janice Anastasato originally filed her appeal in the Eleventh Circuit. That Court, on February 3, 1986, transferred this appeal to the Third Circuit, which consolidated it with Pano's appeal. Panmarc, the other petitioner before us, did not appeal.↩